### THE STATE v. J. M. WOODARD, Appellant.

Division Two, June 5, 1925.

1. **ABATEMENT**: Preliminary Hearing: Trial upon Subsequently Amended Information. If the defendant was accorded a preliminary hearing before the justice of the peace upon an information charging the crime with enough certainty to leave no doubt as to the

time, place and nature of the offense and in terms easily to be understood, an amended information filed in the circuit court and containing the same substantial allegations, but stating the same offense with more formal particularity, embodies the same charge, and his plea in abatement, based on averments that he has not been accorded a preliminary hearing on the amended information, should be overruled.

2. **PANEL: Summoned by Circuit Court: Presumptive Regularity.** Nothing to the contrary appearing, the order of the circuit court summoning a panel of jurors is clothed with a presumption of regularity, and accompanying this presumption are the further ones that the county court had not made the selection required by statute (Secs. 6615, 6616, R. S. 1919) and that the sheriff in executing the order of the circuit court conformed to the statutory requirements in distributing his selections among the different townships of the county.

3. ———: ———: **Directory Statute.** The statute pertaining to the impaneling of juries in criminal cases is directory merely, and a disregard of its directions will not work a new trial in the absence of prejudice to the defendant.

4. **EVIDENCE: Relevant Circumstance: Connection with Crime.** It having been shown that the person who attempted to rob the bank was armed with a pistol, testimony of another witness that defendant a few minutes later went to his smokehouse, and of another witness that, after defendant's arrest and with his consent, he went to the smokehouse and found there a loaded pistol, is admissible as a circumstance tending to show defendant's connection with the attempted robbery.

5. **JURORS: Opinions Formed: Newspaper Reports,** A venireman who had read newspaper reports or has talked to persons concerning the case is not a disqualified juror, if, in reply to inquires, he states that the information thus obtained will not influence him in rendering a verdict, but that he will be governed by the evidence adduced at the trial. Even if he answers that the information thus obtained has caused him to form an opinion as to the merits of the case, that will not disqualify him if he further answers that he will be governed by the evidence in reaching a verdict regardless of such opinion.

---

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Sections 566, p. 519, n. 20; 1017, p. 539, n. 47; 2634, p. 1134, n. 53. Juries, 35 C. J., Sections 348, p. 327, n. 38; 360, p. 333, n. 49; 363, p. 335, n. 69, 71; 377, p. 344, n. 13; 385, p. 349, n. 80. Robbery, 34 Cyc. p. 1813, n. 5.

State v. Woodard.

Appeal from Polk Circuit Court.—*Hon. C. H. Skinker,* Judge.

Affirmed.

*T. H. Douglas* and *L. Cunningham* for appellant.

(1) The demurrer to the State's evidence should have been sustained. It was wholly insufficient to justify a conviction. The evidence of witnesses Adams and Brock taken as being true the defendant could not have committed the crime. (2) The evidence of witnesses Wimberly and Adams was highly prejudicial. We are unable to discover any principle of law authorizing the search of defendant's premises, or the admission of evidence as to the finding of a pistol, or the exhibition of the pistol to the jury. The fact that a citizen may have a pistol at his home is certainly no evidence that he is guilty of committing any criminal offense. It only tended to bias and prejudice the jury against the defendant. (3) The defendant did not have a fair trial before an impartial jury. Jurors Allison and Frieze should have been excluded on being challenged for cause by defendant. Juror Locke was not competent to sit as a juror in the case. State v. Connor, 252 S. W. 713; Gibney v. Transfer Co., 204 Mo. 704; Heasley v. Nichols, 80 Pac. 769; State v. Gonce, 87 Mo. 627; State v. Wheeler, 108 Mo. 658; State v. Burnside, 37 Mo. 343.

*Robert W. Otto,* Attorney-General, and *James A. Potter,* Special Assistant Attorney-General, for respondent.

(1) There was no error in overruling appellant's plea in abatement. The original affidavit filed by the prosecuting witness under which a preliminary hearing was had was sufficient to justify the prosecutor in carving out of the same the charges contained in the amended information. State v. Flannery, 263 Mo. 579. (2)

The court committed no error in refusing to· quash the jury panel. Sec. 6615, R. S. 1919. (3) The court committed no error in overruling the demurrer to the State's evidence. State v. Hulbert, 253 S. W. 764. (4) The court committed no error in refusing to disqualify the jurors, Allison, Frieze, and Locke. State v. Poor, 286 Mo. 657; State v. Mace, 262 Mo. 154.

WALKER, P. J.—The appellant was charged by information in the Circuit Court of Polk County with an attempt to rob a bank. Upon a trial before a jury he was convicted and his punishment assessed at two years' imprisonment in the penitentiary. From this judgment he appeals.

The bank attempted to be robbed was in a building located in Bolivar. The offense occurred at midday, between twelve and one o'clock, October 12, 1923. The only person in the bank at the time was a clerk named Woodruff. Two citizens, named Adams and Brock, were in the former's office at the time. This office was located on the same floor and in the same building as the bank. The clerk testified to his identification of the appellant at the time of the, offense. Adams testified that while he and Brock were seated in the former's office they heard an alarm which caused him to go into the vestibule of the building and thence into the bank where he saw, but did not recognize, someone who was staging the "holdup." He returned to his office, told Brock what he had seen and then ran out to notify some of the officers of· the bank what was occurring. He then returned to his office and saw the appellant who came out of the bank building and got into his automobile, which was standing just across the curb, and drove away. The witness, in addition, described the manner in which the appellant was dressed.

Brock testified that when apprised of the attempted robbery he went out into the vestibule and as he did so the appellant came out of the banking room and spoke to him as he passed. His description of the manner in

which the appellant was dressed was the same as that of Adams.

The bank clerk testified that while he was alone and at work during the noon hour in the bank he heard sounds that indicated that someone was entering or had entered the banking room. He started towards the front part of the room and as he reached a gate, separating the room he was in from the front office, a man arose and leveled a gun at him, but said nothing. The witness made an outcry and threw up his hands. The man ordered him into the vault, towards which he backed, keeping his eyes on his assailant as he entered the vault. The man then attempted to close and lock the vault doors, but for some reason he failed in this effort. While he was thus engaged the witness recognized him as Woodard, the appellant. He was dressed as described by the other two witnesses, and had a handkerchief over a portion of his face.

Another witness, named Bayte, testified that he was at a barn near the appellant's house in Bolivar on the day of the attempted robbery and while there he saw the appellant, some time before twelve and one o'clock midday, approaching his residence in an automobile. The witness called to the appellant and asked him to come down to the barn. Appellant said, "wait a minute." He then alighted from his car, went to a smokehouse near his residence, entered it, remained there a few minutes and then came out and talked to the witness. Another witness for the State, named Wimberly, testified that soon after the arrest of the appellant on the day of the crime he went to the latter's residence and found a loaded pistol concealed in his smokehouse.

Numerous relatives of the appellant, including two of his children, said they saw him at different times during the forenoon of the day of the crime and that his dress was entirely different from that described by witnesses for the State. Five witnesses swore that his reputation was good prior to the charge of the attempted robbery. Appellant denied his guilt. He admitted that

he had gone to the bank building about the time of the attempted robbery,; that his purpose in going was to see the proprietor of a telephone company whose office was on the second floor of the bank building; that as he was returning from the telephone office he met Brock, witness for the State, and spoke to him and saw the witness Adams on the sidewalk, but that at no time during the visit to the building was he in the banking room.

The condition of this transcript is one of almost inextricable confusion. Its most glaring fault consists in duplications by which matters properly belonging only in one subdivision of the transcript are found both in the record and the bill of exceptions. No tenable excuse can be offered for this condition. Our rules of procedure clearly define by statute and numerous cases the manner in which a transcript should be prepared and afford ample information to enable those charged with the preparation of records for this court to properly inform themselves as to their duty. The failure so to do entails much unnecessary labor on this court.

I. The overruling of defendant's plea in abatement constitutes the first assignment of error. The burden of this plea is that the second amended information upon which the appellant was tried does not embody the same charge that was made against him before a justice of the peace and that the appellant has not been accorded a preliminary examination on the information.

*Abatement: Preliminary Hearing.*

That a preliminary examination was accorded the appellant when the complaint was filed against him before the justice of the peace is admitted in his plea of abatement. This right having been extended to him the only remaining question is as to whether the complaint filed before the justice of the peace charges the same offense as that preferred against him in the information. Each charges an attempt to rob the bank. The first, as we said in State v. Flannery, 263 Mo. l. c. 587, may not define the crime with the precision and formality pre-

scribed in the books, but it does so with enough certainty to leave no doubt as to the time, the place and the nature of the offense charged; while the second, with that formal particularity required by the rules of pleading, charges the same offense, viz.: an attempt to commit the robbery by putting the clerk in charge of the bank in fear of immediate danger to his person; the substantial allegations being the same in both and couched in terms easily to be understood, no reason exists to sustain the conclusion that the defendant did not understand the charge made against him in each. It is therefore but the threshing of old straw in the presence of our rulings upon almost every phase of this contention as exemplified in the well considered cases of State v. Piro, 246 S. W. (Mo.) 928; State v. Gartland, 263 S. W. (Mo.) 165, to insist that the same offense is not denounced in each of these charges. This being true the right to a preliminary examination having been extended to the appellant in the proceeding before the justice of the peace, constituted a waiver of that right in the circuit court. This we expressly held in Ex parte McLaughlin, 210 Mo. l. c. 663; State v. Ferguson, 278 Mo. l. c. 129; and State v. Flannery, 263 Mo. 579. These cases we subsequently cited with approval in State v. Langford, 293 Mo. l. c. 443.

In thus ruling we also pass adversely upon the assignment as to the insufficiency of the information.

II. The manner in which the array was summoned from which the trial jury was selected is assigned as error. The burden of this contention is that the array was summoned under the authority of an order of the circuit court instead of being selected by the county court and drawn by the county clerk under the provisions of Section 6615 and 6616, Revised Statutes 1919. The order of the circuit court is entitled to the presumption of regularity which, in the absence of evidence to the contrary, attends the proceedings of a court of general jurisdiction. In addition, Section 1616 provides that where jurors have not been selected as

**Venire.**

provided by statute that the sheriff shall summon them for the term in the manner therein provided. The exercise of this authority, under the order of the court, carries with it, nothing in contravention thereof appearing, the further presumptions: first, that the county court had not made the selection required by statute; and, second, that the sheriff in the execution of the order of the circuit court conformed to the requirements of the statute in distributing his selection among the different townships of the county.

Furthermore, it is held that the statute with respect to the impaneling of juries in criminal cases is directory merely, and even if disregarded it will not be a ground for a new trial in the absence of circumstances from which it can be inferred that some prejudice resulted to the defendant by reason thereof. [State v. Hayes, 262 S. W. (Mo.) l. c. 1036; State v. Riddle, 179 Mo. l. c. 294, and cases.]

III. Complaint is made of the admission of the testimony of two witnesses, named Wimberly and Adams. It had been shown by a witness for the State, named Bayte, that he was near the appellant's house at the time of the return of the latter the day of the attempted robbery and that the witness called to the appellant to come to him, when the latter said, "Wait a minute," and went into the smokehouse and then came to the witness. This fact having been shown and also that the person who committed the offense was armed with a pistol it was not improper to show by Wimberly that he went to the appellant's smokehouse, with the consent of the latter, and found concealed therein a loaded pistol. Testimony of this character is admissible as a circumstance tending to show the appellant's connection with the crime. [People v. Courtright, 10 Cal. App. 522; Serop v. State, 69 Tex. Cr. 399.]

*Relevant Circumstance.*

IV. The jurors challenged by counsel for the appellant on the *voir dire* examination were competent and

the refusal of the court to sustain the challenges was not error. Within the contemplation of the law a juror is not disqualified who has read newspaper reports or has talked to persons concerning the case in which he is being examined, if, in reply to inquiries in regard thereto, he states that the information thus obtained will not influence him in rendering a verdict, but that he will be governed by the evidence adduced at the trial. Further than this, if he answers that the information obtained has caused him to form an opinion as to the merits of the case this will not disqualify him if he states that he will be governed by the evidence in reaching his verdict regardless of his former opinion. [State v. Samis, 296 Mo. l. c. 487; State v. Poor, 286 Mo. l. c. 656.; State v. Herring and Baldwin, 268 Mo. l. c. 529 and cases; State v. Smith, 228 S. W. l. c. 1060 and cases.]

**Jury.**

In the Poor case we reviewed the earlier rulings on this question and discussed the large discretion confided in the trial court in, the performance of the duty of selecting a trial jury. The conclusion there reached may pertinently be referred to as applicable in the instant case.

From these cases may be deduced the general rule that when a defendant, to use the quaint phrase of the common law, "puts himself upon the country," the limit of his rights in the selection of the triers of the facts is that they be unprejudiced, or in other words, with that discrimination which should characterize the performance of their duty, that their minds may be open only to the consideration of such facts as are admitted in evidence. The jurors objected to in this case met this measure and the appellant has no just ground of complaint on this score.

V. The facts in evidence are ample to sustain the verdict. Appellant was fully identified in the very attempt to commit the crime. His partially covered face and armed and threatening attitude leave no doubt, in the reasoning mind, as to his purpose.

**Sufficient Evidence.**

That the crime he was attempting to perpetrate was not consummated is due wholly to his ineffectual efforts to close the vault doors and the consequent fear of apprehension arising from his failure so to do. He rests his defense on his denial of guilt and the testimony of his relatives that he was not dressed the day of the crime as described by the witnesses for the State. The jury saw all of these witnesses, heard them testify and gave credence to those for the State. The record offers no reason for disturbing their verdict.

If it be deemed necessary to resort to precedents to sustain the foregoing conclusion, the following cases will be found to be illustrative of the *quantum* of evidence necessary to sustain a conviction: State v. Bater, 232 S. W. (Mo.) 1012; State v. Lasson, 292 Mo. 155; State v. Affronti, 292 Mo. 53.

The appellant has been accorded all of the rights to which one accused of crime is entitled. There remains, therefore, no alternative but an affirmance of this judgment. It is so ordered. All concur.