Filed 6/26/13  P. v. Jones CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MELVIN ANDREW JONES,<br><br>　　　Defendant and Appellant. | B241310<br><br>(Los Angeles County<br>Super. Ct. No. NA089283) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Charles D. Sheldon, Judge.  Reversed with directions.

　　　　Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, and Tasha G. Timbadia, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Melvin Andrew Jones appeals from the judgment entered following a jury trial in which he was convicted of second degree robbery. Defendant contends the trial court erred by failing to instruct sua sponte on attempted robbery as a lesser included offense. We agree.

## BACKGROUND

Robert Ayres testified that as he was driving in Long Beach on the morning of June 18, 2011, he heard several cars' horns honking. He looked around and saw defendant dragging an older woman across an intersection by pulling on the body of a purse that the woman was wearing on her shoulder. The woman shouted for help. She repeatedly fell, but maintained a grip on the purse. When defendant and the woman reached the sidewalk on the far side of the intersection, the woman was on the ground and defendant kicked her head and shoulders. Ayres parked his truck and shoved defendant. Ayres testified that defendant "broke loose with the purse" and ran with it for five or ten feet before tripping, falling, and dropping the purse. Defendant got up and "took off" without the purse.

Ayres testified he got back in his truck and followed defendant. A man in a city truck was also following defendant while speaking on a mobile phone. Ayres again got out of his truck and approached defendant. Ayres tripped defendant and held him down. Defendant repeatedly tried to get up. A man on a motorcycle arrived and said he would hold defendant. Ayres returned to the intersection where he had seen the struggle for the purse and spoke to police when they arrived. Ayres admitted he had been convicted in 2005 of two felonies: unlawful taking or driving of a vehicle and resisting arrest by force or violence.

David Roberts, who worked for the City of Long Beach and was driving a city vehicle, testified he heard several cars' horns honking, then saw defendant and a woman struggling over a purse. Defendant was pulling on the purse and the woman was attempting to hold onto it. Roberts turned at the light, pulled over, and phoned 911. When he looked back at defendant, he saw "people intervening," "trying to assist." They

2

were not hitting defendant. The next thing Roberts saw was defendant walking northbound on Long Beach Boulevard. Roberts did not see the purse and did not know if defendant had it with him.[1] Roberts also did not see anyone drop the purse or take it away from defendant. Roberts followed defendant in his truck while continuing to speak to a dispatcher. Another truck drove up behind Roberts and a man got out and beat defendant, knocking him to the ground and punching him at least a dozen times. A man wearing a motorcycle helmet arrived and also punched defendant. Both of those men left before the police arrived. Defendant got up and continued walking until the police detained him.

The police summoned paramedics, who took defendant to a hospital. At the hospital, defendant told the police that another man walking ahead of him in the intersection committed a robbery, but two witnesses stopped defendant and beat him up.

At trial defendant testified he was crossing the intersection alongside a man who attempted to take the victim's purse. Defendant wanted to intervene, but the man was big and had given him a particular look defendant demonstrated in the courtroom. The victim did not let go of her purse, and the man never succeeded in getting it away from her. Defendant continued to walk, looking around for police officers to flag down. A white van pulled up alongside defendant and two men—not Ayres or Roberts—got out. They used racial slurs and accused him of being involved in attempting to take the woman's purse. They hit the back of defendant's head, knocking him to the ground, then kicked him, dragged him, spat on him, and took his shoes. After the men left, the police arrived. Defendant admitted he had a prior felony conviction for assaulting a police officer.

Long Beach Police Officer Gabriel Betanzos, who interviewed Ayres at the scene, testified Ayres said that after he saw defendant dragging the woman across the intersection, he saw a man punch defendant in the face. Defendant then broke free and

---

[1] The Attorney General incorrectly states in her brief that Roberts testified he

3

started running with the purse. The man who had hit defendant chased him and was able to retrieve the purse. Ayres said he followed defendant in his vehicle, then approached him on foot. Defendant punched Ayres in the face twice and Ayres punched defendant back. At some point, Ayres tripped defendant. Ayres left after two other men arrived and detained defendant.

The jury convicted defendant of second degree robbery. The court found true allegations under the "Three Strikes" law and Penal Code section 667, subdivision (a)(1) that defendant had a prior serious felony conviction. (Undesignated statutory references are to the Penal Code.) The court sentenced defendant to prison for 11 years, consisting of a second strike term of 6 years and a 5-year enhancement under section 667, subdivision (a)(1).

## DISCUSSION

Defendant contends the trial court erred by failing to instruct sua sponte on attempted robbery as a lesser included offense. We agree.

A trial court must instruct sua sponte on a lesser included offense "when the evidence raises a question as to whether all the elements of the charged offense were present, but not when there is no evidence that the offense committed was less than that charged." (*People v. Cruz* (2008) 44 Cal.4th 636, 664.)

Robbery is defined as the taking of personal property of some value, however slight, from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property. (§ 211; *People v. Marshall* (1997) 15 Cal.4th 1, 34.) "The taking element of robbery itself has two necessary elements, gaining possession of the victim's property and asporting or carrying away the loot." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165.) Gaining possession of the victim's property occurs when the defendant secures dominion over it. (*People v. Alvarado* (1999) 76 Cal.App.4th 156, 161, disapproved on another point in *People v.*

_____

"saw . . . appellant subsequently walking away with the purse."

4

*Lopez* (2003) 31 Cal.4th 1051, 1063, fn. 2.) Evidence of slight movement is sufficient to establish the asportation element. (*Cooper*, at p. 1165.)

The evidence here raised a question about whether defendant ever obtained dominion over the victim's purse. The victim did not testify nor were any statements by her admitted. The purse was recovered but no evidence was introduced to show where it was in relation to the victim. Ayres and Roberts both testified that the victim maintained her hold on her purse as defendant attempted to take it. Although Ayres testified and told the police that he saw defendant free the purse from the victim's grasp, Roberts did not see the purse in defendant's possession as defendant walked away after bystanders intervened. Defendant testified that the thief (whoever he was) never succeeded in removing the purse from the victim. Thus, although Ayres's testimony was sufficient to support the conviction, the testimony of Roberts and defendant raised a question about the taking element of robbery. The trial court should have instructed sua sponte on attempted robbery as a lesser included offense.

We assess the prejudicial effect of the trial court's error in failing to instruct upon attempted robbery pursuant to *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Moye* (2009) 47 Cal.4th 537, 541.) We conclude there is a reasonable probability a properly instructed jury would have convicted defendant of attempted robbery, rather than robbery. The only evidence supporting a finding that defendant obtained dominion over the victim's purse was Ayres's testimony and a portion of his statement to Officer Betzanos. Notably, Ayres's testimony and statement to Betzanos differed regarding how defendant managed to wrest the purse from the victim and how he lost possession of it. Roberts's testimony indicated that Ayres savagely beat defendant, which supported an inference that Ayres was hostile toward defendant and that he may have exaggerated the extent of defendant's conduct, possibly to deflect attention from his own violent acts. Given Ayres's prior felony convictions, the significant discrepancies between Ayres's testimony and his statement at the scene to Betzanos, and evidence of Ayres's violent behavior toward defendant, it is reasonably probable that a jury instructed upon

5

attempted robbery as an alternative to either acquittal or conviction of robbery would have concluded that the prosecution had not established beyond a reasonable doubt that defendant obtained dominion over the victim's purse and convicted defendant of attempted robbery.

We note that the prosecutor may have exacerbated the prejudice flowing from the failure to instruct upon attempted robbery by arguing to the jury, without objection, "So when we're talking about this robbery, I don't think the argument in this case, given the testimony, is whether or not a robbery actually occurred here because every single witness that testified agrees that there was a robbery. And even the defendant testified that there was a robbery." Defendant did not testify that there was a robbery. He testified that the robber did not get the purse away from the victim, which meant there was only an attempted robbery, not a completed one. Defense counsel neither corrected the prosecutor's misstatement nor argued that there was insufficient proof of any of the elements of the crime, other than defendant's identity as the robber.

Because the evidence is sufficient to support an attempted robbery conviction, upon remand, the prosecutor's office will have the option of either retrying the robbery charge or accepting a reduction of the conviction to attempted robbery.

Given our disposition, we need not address defendant's contention, which the Attorney General concedes, that the trial court erred by imposing restitution and parole revocation fines greater than the statutory minimum at the time of the crime, after stating an intent to impose the minimum fines. The trial court can reconsider the amount of these fines upon remand for resentencing.

6

## DISPOSITION

The judgment is reversed and the matter is remanded for retrial. If the prosecution does not elect to retry the robbery charge, the trial court shall reduce defendant's conviction to the lesser included offense of attempted robbery (Pen. Code, §§ 664, 211) and resentence him.

NOT TO BE PUBLISHED.


MALLANO, P. J.

We concur:


ROTHSCHILD, J.


CHANEY, J.